**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**PIKE COUNTY, MISSISSIPPI**
*By its Board of Supervisors*                                                      **PLAINTIFF**

**V.**                                                      **Civil Action No.: 3:11-cv-057-TSL-MTP**

**INDECK MAGNOLIA, LLC**                                                      **DEFENDANT**

## ORDER GRANTING MOTION TO DISQUALIFY

This matter is before the court on the [5] Motion to Disqualify of Defendant Indeck

Magnolia, LLC ("Indeck"). Having considered the submissions of both parties and applicable

legal standards, the court finds that the [5] motion is well-taken and should be GRANTED.

### *Factual Background*

On October 15, 2008, Indeck purchased a sixteen acre tract of property from Plaintiff

Pike County, Mississippi. According to Indeck, an attorney-client relationship was formed at this

time between Indeck and Wayne Dowdy, counsel for Pike County in the instant suit–a

relationship which allegedly continued until 2010. Indeck further alleges that the initial scope of

representation by Wayne Dowdy and his firm, Dowdy Cockerham & Watt, was to facilitate

Indeck's purchase of the sixteen acres by the following means: negotiating the purchase of the

property from Pike County, presiding over the closing, preparing the United States Department of

Housing and Urban Development (HUD) Settlement Statement, and preparing the Title Insurance

Policy in the amount of $128,400. Def.'s Ex. A. [5-1]; Ex. B. [5-2]. After Indeck acquired the

property, Dowdy assisted in acquiring and executing a second Title Insurance Policy and HUD

Settlement Statement. Def.'s Ex. D. [5-4]; Ex. E. [5-5].

In June 2010 Dowdy assisted Indeck again by preparing and issuing a Certificate of Title for the sixteen acre parcel for the purpose of marketing the property for sale. Def.'s Ex. I [5-9] at 2. On or about December 14, 2010, Indeck contacted Dowdy and requested another title search of the sixteen acres, as well as a Certificate of Title, in preparation for an upcoming sale of the property to Investar Redevelopment, LLC ("Investar"). Indeck informed Dowdy that the closing of the sale of the property to Investar was to take place by the end of December 2010. *Id.*

On December 22, 2010, Dowdy, acting as attorney for Pike County, brought a lawsuit against Indeck alleging that Indeck violated its 2008 contractual agreement with Pike County to build a facility on the sixteen acres within two years of the purchase date, or alternatively, to give Pike County the option of re-purchasing the property. *See* Complaint [1-1]. According to Indeck, Dowdy revealed to Pike County confidential client information regarding the upcoming sale of the sixteen acres in violation of Rule 1.6 of the Mississippi Rules of Professional Conduct and ABA Model Rules of Professional Conduct.[1]  Moreover, Indeck contends that Dowdy violated Mississippi Rules of Professional Conduct 1.7 [2] and 1.9[3] by representing Pike County, whose

---

[1] Both rules, in pertinent part, state: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent...."

[2]  A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes: (1) the representation will not adversely affect the relationship with the other client; and (2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.

[3]A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

interests are adverse to Indeck's interests. As a result of these alleged violations, the instant

motion [5] seeks to disqualify Dowdy and his firm, Dowdy Cockerham & Watt, from

representing Plaintiff Pike County, Mississippi.

  To the contrary, Pike County argues that the option agreement for the purchase of the

sixteen acres executed between Indeck Magnolia and Pike County was negotiated by and through

counsel for Indeck, Wendy Taube, and Dowdy–who at all times served solely as the attorney for

Pike County. Pike County maintains that the only communications Dowdy had with Indeck were

by and through Indeck's legal representative, Ms. Taube. Dowdy attested that, as was the case in

the instant suit, he routinely performs title work as a courtesy to prospective economic investors

who seek to purchase real property from Pike County. Dowdy maintains that there was never an

attorney-client relationship between himself and Indeck. Pl.'s Ex. A [12-1] at 1-2.

<u>Legal Standards</u>

  "[M]otions to disqualify are substantive motions affecting the rights of the parties and are

determined by applying standards developed under federal law. Federal courts may adopt state or

American Bar Association ("ABA") rules as their ethical standards, but whether and how these

rules are to be applied are questions of federal law." *In re American Airlines, Inc.*, 972 F.2d 605,

610 (5th Cir.1992)(citations omitted). The United States District Courts for the Northern District

and Southern District of Mississippi have adopted the Mississippi Rules of Professional Conduct.

*Owens v. First Family Financial Services, Inc*., 379 F. Supp.2d 840, 845 (S.D. Miss. 2005); *see*

*also* L.U. Civ. R. 83.5 ("An attorney who makes an appearance in any case in the district court is

bound by the provisions of the Mississippi Rules of Professional Conduct and is subject to

discipline for violating them.").

3

As previously noted, Mississippi Rule of Professional Conduct 1.6, in pertinent part, states: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent...."

Mississippi Rule of Professional Conduct 1.7 states:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes: (1) the representation will not adversely affect the relationship with the other client; and (2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.

Mississippi Rule of Professional Conduct 1.9 states:

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

In considering a motion to disqualify counsel, the court employs the following analysis: "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Owens,* 379 F. Supp.2d at 846 (quoting *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir.1992)). Moreover, a motion seeking to disqualify opposing counsel on the basis of prior representation is subject to the "substantial relationship" test, which consists of the following two elements: "(1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and

4

present representations." *In re American Airlines*, 972 F.2d at 614.

<u>Analysis</u>

Dowdy maintains that, as was the case in this matter, he has frequently negotiated with prospective economic investors on behalf of Pike County in matters concerning the sale of real property by the county and has performed title work as an accommodation to these investors. However, Mr. Dowdy continued to perform title work for Indeck after they purchased the sixteen acres, as evidenced by the certificates of title he issued in June 2010 and December 2010 and collected fees from Indeck for these services.  *See* Def.'s Ex. P [13-4]; Ex. Q [13-5]. On December 14, 2010, Dowdy completed a title search and certificate of title and was informed by Indeck that the certificate of title was needed to sell the sixteen acres to Investar. Def.'s Ex. I [5-9] at 2. On December 22, 2010, Dowdy represented Pike County in filing suit against Indeck, as well as a *Lis Pendens* notice–thereby clouding the title and preventing the sale of this same property.

The court finds that Indeck has met its burden as to the substantial relationship test in that there was an actual attorney-client relationship between Indeck and Mr. Dowdy and there is a substantial relationship between the subject matter of the former and present representations. *See In re American Airlines*, 972 F.2d at 614; *see also* Mississippi Rule of Professional Conduct 1.9(a). The work Dowdy performed for the purpose of Indeck's purchase and attempted sale of the sixteen acres was directly related to the terms of 2008 purchase agreement between Indeck and Pike County, which is at issue in the instant suit.  "[O]nce it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'"

*Owens*, 379 F.Supp.2d at 850 (quoting *In re American Airlines*, 972 F.2d at 614). Indeed, emails included with the materials submitted by Indeck confirm that Indeck received advice from Dowdy in 2008 about the very issues and agreement which now form the basis for the lawsuit. *See* Def.'s Ex. G [5-7].[4]

Moreover, Indeck disclosed to Dowdy the pending sale to Investar and asked him to perform title work in connection with the sale. He performed the work and charged Indeck for it. He now seeks, with that information in hand, to represent Pike County in a lawsuit to effectively prevent the very transaction which Indeck paid him to facilitate. This he cannot do.

Considering the forgoing and noting that Indeck declines to waive any conflict of interest, the court finds that Indeck's [5] Motion to Disqualify should be GRANTED.

IT IS, THEREFORE, ORDERED:

1.    Defendant's [5] motion is GRANTED, and Plaintiff's counsel Wayne Dowdy, and his firm, Dowdy Cockerham & Watt, are hereby disqualified from further participation in the case; and

2.    Plaintiff Pike County, Mississippi is granted thirty (30) days to obtain new counsel.

SO ORDERED, THIS the 29th day of April, 2011.

s/ Michael T. Parker
United States Magistrate Judge

---

[4] The October 14, 2008 email concerning the purchase agreement from Wendy Taube, in-house counsel for Indeck, to Indeck President Gerald DeNotto reads, in pertinent part: "The PikeIndeck Agreement is language taken out of the Deed that says if we don't build in 2 years they can buy back. Wayne said if we decided to not build and sell the property to someone else, this language would cause us problems if in the deed, so Wayne took it out and put it in a separate agreement that they will hold on to." Def.'s Ex. G [5-7] at 1.