UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PIKE COUNTY, MISSISSIPPI
BY ITS BOARD OF SUPERVISORS                                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:11CV57TSL-MTP

INDECK MAGNOLIA, LLC                                           DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Pike County Board of Supervisors for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Indeck Magnolia, LLC (Indeck) has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion is well taken and should be granted.

The present litigation concerns a certain parcel of land owned by Indeck and located in Pike County, Mississippi. Indeck purchased the property from Pike County on October 15, 2008 for the purpose of constructing and operating a wood pallet manufacturing facility. Under the terms of the parties' Agreement to Convey, Indeck had two years within which to "begin to construct and operate" the facility, failing which Pike County had the right to re-purchase the property for Indeck's original purchase price of $128,400. On December 22, 2010, Pike County

filed suit against Indeck in the Chancery Court of Pike County, Mississippi seeking to enforce its alleged contractual right to repurchase the property since, according to Pike County, Indeck had failed "to construct and operate" by the October 15, 2010 deadline established in the contract. Contemporaneously with filing suit, the County filed a *lis pendens* notice in the Pike County Chancery Court land records. Indeck removed the case to this court on the basis of diversity jurisdiction, then filed its answer, along with a counterclaim against the County for breach of contract, breach of the implied duty of good faith and fair dealing, and conspiracy to interfere with contractual relations. Indeck alleged that Pike County's actions in filing the lawsuit and *lis pendens* notice violated the contract, as the County had agreed to a modification extending the two-year deadline, and it alleged further that the County's actions were undertaken in an effort to block Indeck's planned sale of the subject property to a third party, Investar Redevelopment LLC.[1]

In support of its request for partial summary judgment, Pike County argues that since it is undisputed that there is no entry in any minutes of the Pike County Board of Supervisors authorizing

---

[1] More precisely, Indeck Magnolia's sole asset was the Pike County property, and Indeck Magnolia's parent company, Indeck Energy Services, Inc., had contracted to sell Indeck Magnolia to Investar Redevelopment LLC (Investar) as the means of selling the Pike County property to Investar.

2

or approving an amendment to the Agreement to Convey for the purpose of extending the two-year deadline by six months, or by any other period or for any other purpose, then as a matter of law, there was never any legally effective amendment to the Agreement to Convey.[2]  In response, Indeck argues that because it justifiably relied to its detriment on actions by Pike County officials which led Indeck to believe that the County had agreed to extend the deadline for invoking its repurchase right, then the County is estopped from asserting the statute of frauds or the minutes requirement as a bar to enforcement of the County's alleged agreement to extend the contract.  More specifically, Indeck contends that in a telephone conversation on August 16, 2010, Pike County representative Britt Herrin communicated to

---

[2]  Pike County initially argued that the Agreement to Convey and right to repurchase provided therein, and any amendment thereto, qualify as a "contract for the sale of lands" within the Mississippi statute of frauds, which is not enforceable unless "in writing, and signed by the party to be charged."  See Miss. Code. Ann. § 15-3-1; Thompson v. First American Nat'l Bank, 19 So. 3d 784, 787 (Miss. 2009) (writing requirement applies equally to any modification or amendment of contract covered by statute of frauds) (citing Canizaro v. Mobile Communications Corp. of Am., 655 So. 2d 25, 29 (Miss. 1995).  The County argued that it was entitled to a summary adjudication that there was no legally enforceable agreement to extend since there is no writing evidencing any such alleged agreement by the County.  However, the real focus of the County's arguments ultimately is on the principle of Mississippi law, discussed *infra*, that a county board of supervisors may enter a legally enforceable contract, or amend or alter a contract previously entered, only where it does so through public action which is evidenced by an entry on its minutes.  It would seem, therefore, that consideration of the County's arguments concerning the statute of frauds may be superfluous.

3

Indeck's president, Gerry DeNotto, that the County had agreed to a six-month extension to allow for a sale of the property to Investar; that in reliance on the County's express assurances that the County had agreed to this six-month extension and would not attempt to enforce any purported deadline prior to that time, Indeck's parent company entered into a contract with Investar on September 16, 2010 to sell Indeck to Investar for $1.7 million; and that refusal to enforce the County's agreement to a six-month extension would virtually sanction the perpetuation of fraud and result in injustice by potentially permitting Pike County to reacquire the property with millions of dollars in improvements for $128,400 at the expense of Indeck and Investar. See C.F. Frazier Constr. Co., Inc. v. Campbell Roofing and Metal Works, Inc., 373 So. 2d 1036, 1038 (Miss. 1979) (elements of promissory estoppel are: (1) the making of a promise, even though without consideration, (2) the intention that the promise be relied upon and in fact is relied upon, and (3) a refusal to enforce it would virtually sanction the perpetuation of fraud or would result in other injustice).

It is a "fundamental and inviolable policy" of the State of Mississippi that the exclusive means by which a county government may enter a contract or amend or alter any contract entered by the county is through public action by the county's board of supervisors, which action "must be evidenced by an entry on its

4

minutes." Williamson Pounders Architects, P.C. v. Tunica County, Miss., 681 F. Supp. 2d 766, 772 (N.D. Miss. 2008), aff'd, 597 F.3d 292, 296-297 (5th Cir. 2010). For more than a century, the Mississippi Supreme Court has consistently and routinely held that "boards of supervisors and other public boards speak only through their minutes and their actions are evidenced solely by entries on the minutes." Thompson v. Jones County Cmty. Hosp., 352 So. 2d 795, 796 (Miss. 1977). The court in Thompson explained:

> A board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did. The individuals composing the board cannot act for the county, nor officially in reference to the county's business, except as authorized by law, and the minutes of the board of supervisors must be the repository and the evidence of their official acts.

Thompson, 352 So. 2d at 796 (quoting Smith v. Board of Supervisors, 124 Miss. 36, 41, 86 So. 707, 709 (1920) (emphasis added)). See also Board of Supervisors v. Dawson, 208 Miss. 666, 672, 45 So. 2d 253 (1950) (holding that "boards of supervisons [sic] can bind counties, or districts therein, only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statutes, and that their contracts, and every other substantial action taken by them must be evidenced by entries on their minutes, and can be evidenced in no other way") (quoting Lee County v. James, 178 Miss. 554, 559,

5

174 So. 76, 77 (1937). The court has described its justifications for its rigidity respecting the minutes requirement as follows:

> "(1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and (2) that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, and to which all the public may have access to see what was actually done."

Rawls Springs Util. Dist. v. Novak, 765 So. 2d 1288, 1291-92 (Miss. 2000)(quoting Lee County v. James, 174 So. at 77). Because of the minutes requirement, "oral contracts can not be formed by or enforced against county boards of supervisors." Williamson Pounders, 681 F. Supp. 2d at 771 (citing Butler v. Bd. of Supervisors for Hinds County, 659 So. 2d 578, 581 (Miss. 1995)). And, since a board's "minutes are the exclusive evidence of what the board did, ... parol evidence is not admissible to show what actions the board took." Myers v. Blair, 611 So. 2d 969, 972 (Miss. 1992) (quoting Noxubee County v. Long, 141 Miss. 72, 106 So. 83, 86 (1925)).

In this case, it is undisputed that there is nothing in the minutes of any meeting of the Pike County Board of Supervisors which records or refers to any agreement to amend the Agreement to Convey. Notwithstanding this, Indeck argues that the County

6

representative's assurance to Indeck that the Board had approved an extension estops the County from denying its agreement to amend the Agreement to Convey to extend the deadline for Indeck's performance (or from asserting the statute of frauds to avoid enforcement of such agreement). In the court's opinion, Indeck's reliance on estoppel as a basis to deny the County's motion is foreclosed by the minutes requirement.

The Mississippi Supreme Court has held that the minutes requirement is to be strictly adhered to, even where doing so would result in apparent injustice. Urban Developers LLC v. City of Jackson, Miss., 468 F.3d 281, 299 (5th Cir. 2006) (citing Butler, 659 So. 2d at 581 (discussing Mississippi's "past strict adherence to the requirement that a board of supervisors only be bound by a contract entered upon its minutes"), and Warren County Port Comm'n v. Farrell Constr., 395 F.2d 901, 904 (5th Cir. 1968) (describing the Mississippi requirement as "stringent")). See also Williamson Pounders, 597 F.3d at 296-97, 298 (observing that "[t]he Mississippi Supreme Court requires 'strict adherence' to having a writing placed upon the minutes in order to bind a board of supervisors" and noting Mississippi Supreme Court's "insistence that the requirement of a minute entry must be enforced even if it might seem to lead to an injustice")(quoting Butler, 659 So. 2d at 581-82). Thus, in Urban Developers LLC, supra, the Fifth Circuit

7

rejected the plaintiff's assertion of estoppel as a means to overcome Mississippi's minutes requirement, stating,

> The general rule ... is that "[s]uch contracts when so entered upon the minutes may not be varied by parol *nor altered by a court of equity*." Farrell Constr., 395 F.2d at 904 (emphasis added) (citing McPherson v. Richards, 134 Miss. 282, 98 So. 685 (1924)). The plaintiff's invocation of equities to meet the "spread upon the minutes" requirement is usually prohibited, in part, because "each person, firm or corporation contracting with a board of supervisors is responsible to see that the contract is legal and properly recorded on the minutes of the board." Thompson, 352 So. 2d at 797; see also id. at 798 ("It was the responsibility of the plaintiff to see that the contract was properly recorded on the minutes").

468 F.3d 281, 300 (5th Cir. 2006). See also Butler, 659 So. 2d at 582 (stating that all contracting parties are "charged with the knowledge that a board of supervisors can only make the county liable for a contract by a valid order duly entered upon its minutes"); Novak, 765 So. 2d at 1292 (applying "well-established rule in Mississippi that the doctrine of equitable estoppel cannot be applied against the state or its counties where the acts of their officers were unauthorized" to bar enforcement of agreement by individual board member where board minutes did not reflect member's authorization to enter subject agreement on behalf of board) (quoting Oktibbeha County Bd. of Educ. v. Town of Sturgis, 531 So. 2d 585, 589 (Miss. 1988)); Colle Towing Co. v. Harrison County, 213 Miss. 442, 57 So. 2d 171, 172 (1952) (observing that "[i]t has been repeatedly held in this State that a board of

8

supervisors can contract and render the county liable only by a valid order duly entered upon its minutes, that all persons dealing with a board of supervisors are chargeable with knowledge of this law, ... and ... that in such case there is no estoppel against the county").[3] Indeed, it stands to reason that where a party is charged by law with knowledge that a writing placed upon the minutes is required in order to bind a board of supervisors, and where such party bears the responsibility of seeing to it that its contract was properly recorded on the minutes, then it is not inequitable or unfair to hold that party to the consequences of

---

[3] The only case cited by Indeck which arguably involves estoppel in the context of governmental board is <u>American-LaFrance, Inc., v. City of Philadelphia</u>, 183 Miss. 207, 184 So. 620. However, the Mississippi Supreme Court found that reliance on <u>American-LaFrance</u> was unfounded where the issue was the liability of a county board of supervisors. In <u>Colle Towing Co. v. Harrison County</u>, the court observed that <u>American-LaFrance</u> "involved the question of liability of a municipality," and stated, "[Mississippi] laws pertaining to municipalities are so radically different from those governing proceedings of a board of supervisors that [<u>American-LaFrance</u>] [is] no authority on the question here presented." 213 Miss. 442, 57 So. 2d 171, 172 (1952).

The court notes, too, that in <u>Urban Developers LLC v. City of Jackson, Miss.</u>, the Fifth Circuit distinguished a line of cases which broadly applied equitable estoppel against public boards, see, e.g., <u>Bd. of Educ. of Lamar County v. Hudson</u>, 585 So. 2d 683, 688 (Miss. 1991) (holding that a public board "may be equitably estopped under the proper circumstances"), on the basis that "they do not involve the strict Mississippi minutes requirement, but instead simply permit equitable estoppel to be enforced against a board in other contexts, for example, as through the doctrine of after-acquired title." 468 F.3d 281, 299 (5th Cir. 2006) (citing, as an example, <u>Oktibbeha County Bd. of Educ. v. Town of Sturgis</u>, 531 So. 2d 585, 589 (Miss. 1988)).

his failure to ensure that the contract (or an amendment thereto) was properly recorded on the minutes. Prior to entering the contract with Investar, Indeck could have ascertained whether the Board's alleged agreement to grant a six-month extension of its repurchase right under the Agreement to Convey had been recorded in the minutes, and in the court's view, proceeded at its own risk in failing to do so.

Even if the minutes requirement allowed for application of estoppel, the undisputed facts in this case foreclose Indeck's assertion of estoppel as a basis for enforcing an alleged amendment to the Agreement to Convey.[4] First, not only are there

---

[4] The court in Urban Developers acknowledged that in Community Extended Care Centers v. Board of Supervisors for Humphreys County, 756 So.2d 798, 804 (Miss. Ct. App. 1999), the Mississippi Court of Appeals, after first concluding that the minutes requirement was satisfied where the minutes reflected the Board's authorization for the Board president to enter a specific lease, held alternatively that the supervisors were equitably estopped by their actions (which included the original resolution on the minutes and two resolutions to amend the lease, which were also entered in the minutes) from arguing that the "technical omission" of not having the lease contract itself "spread across the minute book" should invalidate the lease contract. 468 F.3d at 301-02. The court in Community Extended Care Centers had noted that although "no estoppel may be enforced 'against the state or its counties where the acts of their officers were unauthorized,' ... the resolution entered on the Board minutes shows the supervisors unanimously approved the lease contract with CECC and authorized the Board president to sign the lease contract on behalf of the Board." 756 So. 2d at 804.

Even accepting the proposition that the minutes requirement does not necessarily foreclose the assertion of estoppel against a county board of supervisors, however, does not change the court's opinion that in this case, as in Urban Developers, estoppel is unavailable on the facts presented.

10

no Board minutes reflecting the Board's approval of an amendment to the Agreement to Convey, there is no evidence in any form tending to prove the Board's approval of an amendment. Further, the only reliance claimed by Indeck as the basis for estoppel is the execution on September 16, 2010 of the contract with Investar. According to Indeck, the only communication from the County relating to Indeck's request for an extension which predated execution of the contract was from Britt Herrin, who in an August 16, 2010 phone call, allegedly represented that the County had approved a six-month extension. However, while Herrin acknowledged in deposition testimony that he may have spoken with Gerry DeNotto of Indeck on August 16, he denied that he told DeNotto unequivocally or unconditionally that the Board had agreed to an extension, and testified, instead, that he told DeNotto only that the Board would be agreeable to an extension, or to considering an extension, depending on its review of Investar's financial statements and business plan. Indeck has offered no evidence to refute Herrin's recollection of this conversation, which is consistent with an email sent by Herrin to Investar on the same date, which recited that "[t]he county has agreed to the six month extension, *with the ... conditions*" that the County "have access to Investar's financial statements and business plan." The evidence plainly establishes, without dispute, that on

the date the contract was executed between Indeck and Investar, Investar had not yet provided its financial statements and business plan to the County.  Given that the evidence reflects that the County's alleged agreement to extend was conditional, Indeck cannot reasonably claim to have been justified in relying on that alleged agreement in executing the contract with Investar at a time when the conditions set by the County had not yet been met.[5]  Thus, Indeck cannot prove the essential elements of estoppel.

Based on the foregoing, it is ordered that Pike County's motion for partial summary judgment is granted.

SO ORDERED this 25th day of April, 2012.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[5]    Much of the conduct which Indeck claims led it reasonably to believe that the County had agreed to the extension involved efforts by the County to work with Investar to facilitate the sale of Indeck to Investar. However, all of those efforts post-dated the September 16th execution of the Indeck-Investar contract and thus cannot have induced reliance. See Bandal v. Baldwin, No. C8-99-972, 1999 WL 1102595, 2 (Minn. Ct. App. Dec. 7, 1999) ("a promisee cannot rely on a 'promise' or conduct that occurred after the action allegedly induced thereby").